*In re S.F.*, No. 582, September Term, 2019. Opinion by Nazarian, J.

**JUVENILE DIVISION – CONDITION OF PROBATION – SCHOOL SUSPENSION**

A no-suspension condition of probation for a juvenile defendant is permissible because the defendant, school administrators, and the defendant's probation officer are guided by the school district's disciplinary handbook as to which behaviors are or are not grounds for suspension. Further, a non-suspension condition of probation is subject to several layers of procedural safeguards within the school's disciplinary system and the judicial system.

Circuit Court for Frederick County, Juvenile Division
Case Nos. C-10-JV-18-000271 & C-10-JV-19-000094

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 582

September Term, 2019

_____

IN RE: S.F.

_____

Nazarian,
Arthur,
Sharer, J. Frederick
    (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Nazarian, J.

_____

Filed:  January 28, 2021

\* Leahy, J., did not participate in the Court's decision to designate this opinion for publication pursuant to Maryland Rule 8-605.1.

Pursuant to Maryland Uniform Electronic Legal Materials Act (§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

S.F. was twelve years old when he entered *Alford*[1] pleas to two different charges in the Juvenile Division of the Circuit Court for Frederick County. The cases proceeded separately, and each magistrate ordered as a condition of probation, among others, that S not be suspended from school. S filed an exception in each case, arguing that the no-suspension condition of his probation was impermissibly vague and failed to provide him with direction about the conduct that would violate it. At the hearing, the judge overruled the exceptions and found that the suspension condition of probation was not vague. S reiterates his vagueness argument on appeal and we affirm the judgments of the juvenile courts.

## I.      BACKGROUND

On February 12, 2019, S, who at the time was twelve years old, entered an *Alford* plea to one count of assault in the second degree. At the disposition hearing on April 2, 2019, over counsel's objection, he was placed on community supervision, and the magistrate recommended that he be placed on indefinite probation. As a condition of probation, S was required to "attend school regularly without any unexcused absences, suspensions, or tardiness."

On May 16, 2019, S entered a second *Alford* plea, this time to one count of misdemeanor theft. At the disposition hearing, over counsel's objection, the magistrate ordered as a condition of probation that S not be suspended from school. Each case

---

[1] "An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." *North Carolina v. Alford*, 400 U.S. 25, 37 (1970).

proceeded separately, and S filed an exception in each case challenging the no-suspension condition on grounds that it was impermissibly vague and failed to provide him direction about what conduct would violate it. At a hearing on June 5, 2019, the judge denied the exceptions, stating that "I don't think that this term of probation or condition of probation is vague in any way."

## II. DISCUSSION

S raises one question on appeal: did the juvenile court err by including as a condition of his probation that he not be suspended from school?[2] Since a "'trial court does not have unlimited discretion to order conditions of probation,'" we review conditions of probation under an abuse of discretion standard. *Meyer v. State*, 445 Md. 648, 663 (2015) (*quoting Bailey v. State*, 355 Md. 287, 294 (1994)). "An abuse of discretion occurs 'where no reasonable person would take the view adopted by the [trial] court, or when the court acts without reference to any guiding rules or principles.'" *In re W.Y.*, 228 Md. App. 596, 608–09 (2018) (alteration in original) (cleaned up) (*quoting Pickett v. State*, 222 Md. App. 322, 331 (2015)).

### A. The No-Suspension Condition Of Probation Is Not Impermissibly Vague.

As in the juvenile court, S raises two challenges to the no-suspension condition. *First*, he argues that the condition fails to adequately apprise him (or the authorities responsible for enforcing the condition) of the actions he must take or refrain from taking

---

[2] The State rephrased the Question Presented as: "Is the "no suspension" condition of S.F.'s probation permissible?"

to avoid a violation. He argues as well that the vagueness is compounded because the process underlying any potential suspension depends on a third party's exercise of discretion. The State responds that the Frederick County Public Schools' ("FCPS") code of student conduct outlines in detail the conduct that can lead to a student suspension and that S is entitled to sufficient process before a suspension can be imposed. We agree with the State.

Conditions of probation "must be clear, definite and capable of being properly comprehended and understood not only by the individual upon whom they are imposed but by those responsible for their enforcement." *Watson v. State*, 17 Md. App. 263, 274 (1973) (*citing Finnegan v. State*, 4 Md. App. 396, 403 (1968)).

> To be enforceable a condition of probation must not be vague, indefinite or uncertain. A general condition of probation is permissible only "so long as it contemplated that the court or its designee (usually the probation authority) will provide the probationer with reasonable, specific direction within the ambit of the initially expressed general condition, and such guidance is in fact given."

*Smith v. State*, 306 Md. 1, 7 (1986) (*quoting Hudgins v. State*, 292 Md. 342, 348 (1982)). "[A] general term of probation is permissible if the court or its designee provides a defendant with reasonable and specific guidance regarding the general term and the defendant understands what is required of him." *Meyer*, 445 Md. at 680 (*citing Hudgins*, 292 Md. at 348). But "a probation requirement may be so amorphous that it is not reasonable to say that the defendant's complained of action was regulated by the standard of conduct imposed by the sentencing judge, thus rendering the penalty inherently incapable of enforcement." *Hudgins*, 292 Md. at 348.

On the face of it, a condition directing someone not to get suspended—much like, for example, a condition directing someone to maintain employment or obtain a driver's license—seems straightforward enough. But S directs us toward two cases, *Watson v. State* and *Hudgins v. State*, to support his argument that the no-suspension condition is impermissibly vague. In *Hudgins*, the defendant argued that the special condition of his probation "to 'cooperate with the Maryland State Police in tracking down criminals' was too vague to be enforceable through revocation." 292 Md. at 347. The Court of Appeals found it likely that the defendant understood the condition because he was required to supply the State Police with information available to him about the criminal activity of others, and he agreed to comply with all reasonable instructions given to him by the police. *Id.* at 349. Even so, and without ruling explicitly that the special condition of his probation was not vague, the Court remanded the case to the trial court to determine if any specific instructions were given to the probationer by the police. *Id.*

In contrast, in *Watson*, "the trial judge announced as a condition of probation that appellant should pay forty percent of his earnings to or on behalf of the minor children of the victim and further provided that the period of probation shall be indeterminate and subject to the further order of the Court." 17 Md. App. at 272. We held that the probation condition could not stand because it failed to define the defendant's earnings, to specify whether the condition applied to gross or net earnings, or to identify who determined what constitutes earnings, plus the period of probation under the order was indeterminate. *Id.* at 270.

In this case, there is no confusion about what it means to be suspended from

4

school—the vagueness, S argues, lies in the subsidiary questions about what conduct can give rise to a suspension, who decides whether to impose a suspension, and the process he's due before a suspension can be imposed and under these circumstances, the answers to these questions are certain enough that the condition isn't impermissibly vague. For students of the Frederick County Public Schools, as S is, the FCPS code of student conduct outlines the behaviors punishable by suspension. These policies, regulations, and procedures are located on the FCPS website as well as in the FCPS Calendar Handbook that is distributed at the beginning of every school year. *See* Office of the Superintendent, Frederick Cty. Pub. Schs., 400-08, Discipline (2020) [hereinafter FCPS Reg.], https://apps.fcps.org/legal/doc.php?number=400-08 [https://perma.cc/9P9Q-74KC]. The code of conduct lays out three tiers of interventions, and tiers two and three describe the responses the school may take: tier two behaviors can result in a "bus suspension," or "in-school suspension," and tier three behaviors can lead to "suspension pending parent conference," "short term out of school suspension," "long term out of school suspension," or "extended out of school suspension." *Id.* at 6. Immediately before the tiers of interventions, the code of conduct lays out the behaviors subject to tier two and three responses—for example: assault, sexual assault, battery, and bullying are defined explicitly as tier three responses—and then defines what each behavioral action means. *Id.* at 5.

Although these policies don't require an automatic suspension for each incident or behavior, the code of conduct provides S with guidance about the actions or behaviors that could cause him to be suspended from school. And in that regard, this case differs from *Watson*: the behavior that could give rise to a suspension, and thus to a violation of

5

probation, is defined with sufficient clarity in the FCPS code of student conduct, which also designates who has discretion in imposing disciplinary measures (*i.e.*, Teacher or School Principal/Designee). *See id.* at 1; *see also Douglas v. State*, 130 Md. App. 666, 675 (2000) (explaining that the individual's condition of probation was not ambiguous and was "sufficient to provide [the defendant] with fair notice of what conduct was prohibited" (alteration in original) (*quoting Nitz v. State*, 745 P.2d 1379 (Alaska Ct. App. 1987))).

S contends that the no-suspension condition is impermissibly vague because "[t]he condition is violated as a direct result of a discretionary action [] done by another person [] to the juvenile, while virtually all other conditions of probation are violated directly by the actions of the juvenile." But this condition is no less suspect because the decision to impose a suspension lies with the discretion of a third party. Many conditions of probation involve obligations to third parties, such as law enforcement or employers, who determine compliance and report to a probation officer, who in turn (as here) has the discretion to decide whether to escalate a failure to comply into a potential violation of probation. *See Hudgins*, 292 Md. at 344 (law enforcement asked to report back to the court to inform it of the extent of the probationer's cooperation with police); *Russell v. State*, 221 Md. App. 518, 523–24 (2015) (during a polygraph test if the probationer admits to a crime, the polygrapher discontinues the test and notifies the probation agent); *Wiseman v. State*, 72 Md. App. 605, 608 (1987) (probation agent in contact with the probationer's employer to verify that she was gainfully employed). And that discretion operates in a defined space: in this instance, the school district's authority to impose suspensions for only certain listed behaviors, which is cabined by the code of conduct.

To be sure, the trial court's broad discretion in imposing probation conditions is "limited in several important respects: a condition of probation must not be vague, indefinite or uncertain, conditions of probation must not be arbitrary or capricious, conditions of probation must be constitutional, conditions of probation must not exceed statutory limits, and conditions of probation must be reasonable and have a rational connection to the offense." *Allen v. State*, 449 Md. 98, 111 (2016) (citations omitted) (cleaned up). This condition does not, under these circumstances, delegate compliance with S's probation to the "broad, unregulated discretion" of school authorities. S cites a study from the Maryland State Department of Education and two press accounts as evidence that suspensions are imposed too frequently in general, imposed for broadly categorized misbehavior that is difficult to document, and imposed disproportionately against Black students.[3] But even if we assume for present purposes the truth of these assertions and that S attends a "high suspending" school (the record doesn't reflect this latter point), these factors still don't render the condition itself vague. The possibility that a suspension could be imposed too quickly or arbitrarily would, when it happens, represent a failure of

---

[3] *See* Md. State Dept. of Educ., MSDE-DAAIT 9/19, Suspensions, Expulsions, and Health Related Exclusions, 25 tbl.8b (2019), http://marylandpublicschools.org/about/Documents/ DCAA/SSP/20182019Student/2019SuspensionsExpulsionsHRExc.pdf [https://perma.cc/ 9JXP-BN7J]; *see* Lena V. Groeger et al., *Miseducation Is There Racial Inequality at Your School?*, Pro Publica (Oct. 16, 2018), https://projects.propublica.org/miseduation/district/ 2400330 [https://perma.cc/X85C-63X6]; *see* Emma Kerr, *Six Frederick County Schools Ranked 'High Suspending' in Statewide Study*, Frederick News-Post (Nov. 9, 2018), https://www.fredericknewspost.com/news/education/six-frederick-county-schools-ranked -high-suspending-in-statewide-study/article_a23479bc-ca6a-5e66-801e-51446387e475. html [https://perma.cc/U3HY-5E6M].

execution and an opportunity for the probation officer to decide whether to pursue a violation and the trial court to decide whether to find one. In the context of the policies and procedures defined by the code of conduct, we find sufficient the definition of the behaviors that can give rise to suspension.

### B. The No-Suspension Condition Of Probation Is Subject To Procedural Safeguards.

*Second*, S argues that the short-term and in-school detentions lack procedural safeguards and, therefore, that courts cannot have confidence in the validity or reliability of a decision to impose a suspension. The State responds that suspensions are measures of last resort, and there are policy restrictions concerning the imposition of the suspension.

Once again, we look to the FCPS student code of conduct which defines the procedures covering suspensions. *First*, the code of conduct states that all students must receive due process and be notified of the charges against them. *See* FCPS Reg., *supra*, at 2. *Second*, administratively imposed discipline is documented in the student information system. The documents remain in the student's permanent record, which includes a description of the student's behavior that resulted in the disciplinary action, and a copy of the correspondence is also sent to the parent(s). *Id. Third*, the code directs school personnel to offer resources to students who become "angry or upset" so that they can "reach a peaceful resolution to their problems." A suspension should be considered only after all positive behavior intervention and support is provided and fails to resolve the situation. *Id.* at 6. The code recommends further that the lowest tiers of intervention be considered first, and long-term suspensions or extended suspensions should be considered only as last

resorts. *See id. Fourth,* if there is a request by the school for an extended suspension, it must be approved by the superintendent or a designated representative. *Id.* at 3. *And fifth,* a parental conference is required in the case of an out-of-school suspension, so parent(s) are included in the process as well. *Id.* at 2. Moreover, a school decision to suspend S doesn't mean automatically that he will be deemed to have violated the no-suspension condition of his probation. *See Hudgins*, 292 Md. at 348–49 (the judge assumes the role of the factfinder and determines whether the State has met its obligation regarding compliance with a condition of probation).

Beyond the administrative safeguards before the decision to suspend, S has two procedural safeguards before any discretionary measure is taken or probation is revoked, most notably the requirement that the judge find that he has violated his probation. *Id.* at 348–49. A suspension isn't necessarily a violation, and "'before any discretionary action [in revoking probation] is occasioned, the judge assumes the role of the factfinder to determine, in the first instance, whether the State has met its obligation of showing that there has been a failure of compliance with a condition of probation . . . .'" *Id.* at 348–49 (alteration in original) (*quoting Coles v. State*, 290 Md. 296, 303 (1981)). Before a violation can be found or probation revoked, the State must prove that the probationer has not complied and even then, ordinarily "probation may not be revoked if the probationer proves that his failure to comply was not willful but rather resulted from factors beyond his control and through no fault of his own." *Humphrey v. State*, 290 Md. 164, 167–68 (1981) (*citing United States v. Boswell*, 605 F.2d 171, 173–75 (5th Cir. 1979)). We disagree, then, that S's no-suspension condition lacks appropriate procedural safeguards, either at the school

9

level or before a suspension ripens into a violation of probation. And for that reason, we find no abuse of discretion in the court's decision to impose it in these cases.

**JUDGMENTS OF THE JUVENILE DIVISION OF THE CIRCUIT COURT FOR FREDERICK COUNTY AFFIRMED. APPELLANT TO PAY COSTS.**

10