[Cite as *State v. Sager*, 2019-Ohio-135.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO | : | APPEAL NOS. C-180051 |
| | | C-180052 |
| Plaintiff-Appellee, | : | TRIAL NOS. C-13CRB-9584A |
| | | C-13CRB-9584B |
| vs. | : | |
| LAKYSHA SAGER, | : | |
| | | *O P I N I O N.* |
| Defendant-Appellant. | : | |

Criminal Appeals From:  Hamilton County Municipal Court

Judgments Appealed From Are:  Affirmed

Date of Judgment Entry on Appeal:  January 18, 2019

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Ronald Springman*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller,* Hamilton County Public Defender*,* and *Krista Gieske,* Assistant Public Defender*,* for Defendant-Appellant.

**CUNNINGHAM, Presiding Judge.**

{¶1} Defendant-appellant Lakysha Sager appeals the decision of the Hamilton County Municipal Court denying her second application to seal records of her convictions for interference with custody, in violation of R.C. 2919.23. Sager had taken her then nine- and 11-year-old daughters from a school-bus stop without the knowledge or permission of their father, the girls' residential parent. Because the girls were victims of Sager's offenses, and because they were under 16 years of age at the time of the offenses, the trial court did not err in concluding that it lacked jurisdiction under R.C. 2953.36 to grant Sager's application.

## I. Facts

{¶2} From the record properly before us, including the original papers filed in the criminal proceeding and the victim-impact statement prepared prior to sentencing, we glean that Sager and Dante Payne, now divorced, have two daughters. Payne was the residential parent with legal custody of the girls. Sager was afforded visitation every other weekend by court order. On Thursday, April 18, 2013, Sager took the girls from their school-bus stop without Payne's knowledge or permission. After the girls were reported missing from school, the police were notified and an Amber Alert was issued. Sager returned the girls to police authorities at 10 p.m., some 14 hours after taking them from the school-bus stop.

{¶3} A Hamilton County Grand Jury returned a two-count indictment charging Sager with interference with custody. The indictment alleged that Sager had knowingly, without privilege to do so, or recklessly enticed, taken, kept, or harbored her two daughters, children under the age of 18, from their parent, guardian, or custodian. Each count named a separate daughter as the child taken in violation of the statute.

{¶4} R.C. 2919.23(A) provides, in pertinent part:

No person, knowing the person is without privilege to do so or being reckless in that regard, shall entice, take, keep, or harbor a person identified in division (A)(1), (2), or (3) of this section from the parent, guardian, or custodian of the person identified in division (A)(1), (2), or (3) of this section:

(1) A child under the age of eighteen, or a mentally or physically handicapped child under the age of twenty-one[.]

{¶5} Following trial in the Hamilton County Municipal Court, a jury returned guilty verdicts on both counts. The trial court entered judgment on the verdicts and continued the matter for a presentence investigation. The court ultimately denied Sager's motion for a new trial on grounds of prosecutorial misconduct and insufficiency of the evidence, and sentenced Sager to a suspended 30-day jail term and a lengthy period of "probation." Sager's several direct appeals from the trial court's judgments of conviction were dismissed.

{¶6} In June 2016, Sager filed an application to seal the records of her convictions. The state objected, arguing that since the victims of Sager's offenses were nine- and 11-year-old children, she was not eligible to have the records of her convictions sealed. The trial court denied Sager's application without identifying the basis of its decision. Sager appealed. This court affirmed the trial court's denial on other grounds and without reaching the issue of whether Sager's application to seal was properly denied on the basis of the age of the victims. *See State v. Sager*, 1st Dist. Hamilton No. C-160664 (Nov. 11, 2017).

{¶7} In January 2018, Sager returned to municipal court and filed a motion to "find applicant eligible to seal criminal record[s]," which the trial court construed as a subsequent application to seal records. The state waived any procedural objections to the motion and renewed its contention that Sager was ineligible as a matter of law. After a hearing on the matter, the same trial court judge who had

3

presided over the jury trial and Sager's first application agreed, noting in his entry that because the offenses involved child victims, Sager was not eligible to have the records sealed. Sager appealed again.

## II. Records of Certain Child-Victim Crimes May Not Be Sealed

{¶8} Here, in a single assignment of error, Sager challenges the trial court's determination that, as a matter of law, she was ineligible to have her records of conviction sealed. She maintains that she was eligible because the victim of her interference-with-custody offenses was Payne, the children's custodial parent, and not the minor children themselves.

{¶9} The sealing of records of conviction is an act of grace created by the General Assembly, and it can be granted only when all requirements for eligibility are met. *See State v. Futrall*, 123 Ohio St.3d 498, 2009-Ohio-5590, 918 N.E.2d 497, ¶ 6. Generally, an appellate court will not disturb a trial court's decision to deny an application to seal records absent an abuse of discretion. But where, as here, the question of eligibility for sealing involves a purely legal question, we review the issue de novo. *See State v. Blair*, 2016-Ohio-5714, 62 N.E.3d 201, ¶ 4 (1st Dist.), citing *Futrall* at ¶ 6; *see also State v. Hill*, 2016-Ohio-1551, 63 N.E.3d 690, ¶ 6 (10th Dist.).

{¶10} R.C. 2953.32 identifies the requirements for an applicant seeking to have records of her convictions sealed. The object of the statute is "to provide remedial relief to qualified offenders in order to facilitate the prompt transition of these individuals into meaningful and productive roles." *Barker v. State*, 62 Ohio St.2d 35, 41, 402 N.E.2d 550 (1980). A court may seal records only when all statutory requirements for eligibility have been met. *See Hill* at ¶ 8.

{¶11} But R.C. 2953.36 precludes the sealing of records of certain offenses. *See State v. Clark*, 1st Dist. Hamilton No. C-130672, 2014-Ohio-3612, ¶ 5. The current version of R.C. 2953.36(A)(6), also in effect at the time that Sager filed her second application, provides that the record-sealing processes in R.C. 2953.32 do not

apply to "[c]onvictions of an offense in circumstances in which the victim of the offense was less than sixteen years of age when the offense is a misdemeanor of the first degree or a felony[.]" *See State v. LaSalle*, 96 Ohio St.3d 178, 2002-Ohio-4009, 772 N.E.2d 1172, paragraph two of the syllabus. We note that versions of former R.C. 2953.36(F), effective before July 2015, precluded the sealing of records of offenses where the child victims were less than 18 years of age.

### III. Who Is a Victim of an R.C. 2919.23 Offense?

{¶12} The resolution of Sager's assignment of error depends on determining who is the victim of her interference-with-custody offenses for purposes of R.C. 2953.36(A)(6). If her children were victims, then R.C. 2953.36(A)(6) would deny the trial court jurisdiction to seal the records of Sager's convictions. If, as Sager argues, the children's custodial parent, Payne, was the victim, the statute would not apply and the more general provisions of R.C. 2953.32 would control her eligibility.

{¶13} But the text of the interference-with-custody statute does not define who is the "victim" of the proscribed offense. Neither the parties nor this court has identified any legal authority in Ohio answering this question directly.

{¶14} Sager raises three arguments in support of her position. She first asserts that whoever has the right to custody of the minor children taken or harbored is the victim of the interference-with-custody offense. Since custody of a child is a right that belongs to the parent, Sager argues, any interference with that custody harms the parent and not the child.

{¶15} But it does not follow from this argument—equating "harm" with status as a "victim"—that only the parent is harmed when custody is interfered with. Under Sager's logic, the children could well be victims, too. Here, after determining the best interests of the children, a domestic relations court had ordered that Payne was to be the children's residential parent, and to have custody of them on school days. Any interference with custody and visitation could just as easily have harmed

5

the children's court-determined best interests as their father's right to custody. *See State v. Wright*, 2016-Ohio-7654, 74 N.E.3d 695, ¶ 40 (4th Dist.); *see also State v. Hirtzinger*, 124 Ohio App.3d 40, 45, 705 N.E.2d 395 (2d Dist.1997).

{¶16} Sager also argues that the underlying facts of her criminal convictions reveal that the children were not harmed or put at risk and thus could not be victims of the offenses. *See, e.g., State v. Jithoo*, 10th Dist. Franklin No. 05AP-436, 2006-Ohio-4978, ¶ 10 (noting that a court should examine the underlying facts of the offense in assessing eligibility for expungement when the defendant ultimately pled guilty to a lesser offense than that he was indicted for).

{¶17} In support of her contention that she did not harm the children, Sager cites to the transcript of the May 2014 jury trial in the municipal court. While two volumes of the January 2018 proceedings before the trial court memorializing Sager's second application for expungement were filed with the trial court, the May 2014 transcript was not and, therefore, is not part of our record on appeal.

{¶18} The "record on appeal" consists of three categories of documents identified in App.R. 9: the original papers and exhibits thereto filed in the trial court; the transcript of proceedings, if any, including exhibits; and a certified copy of the docket and journal entries prepared by the clerk of the trial court. App.R. 9(A)(1).

{¶19} When an appellant relies upon facts shown in a transcript of proceedings, the duty to provide that transcript necessarily falls upon the appellant. *See Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199, 400 N.E.2d 384 (1980). Under App.R. 9(B), this duty includes the obligation to order a transcript of any "proceedings [she] considers necessary for inclusion in the record," and to ensure that the transcript of the proceedings required by App.R. 9(B)(6) is "filed with the clerk of the trial court under App.R. 10(A)."

{¶20} An examination of the record transmitted for review reveals that the May 2014 transcript was never filed in the trial court under the cases numbered C-

13CRB-9584A and C-13CRB-9584B. It was not listed in the certified copy of the docket and journal entries prepared by the clerk of the trial court. And, it was not physically part of the record transmitted for our review.

{¶21} In her appellate brief, Sager states that the May 2014 transcript was filed in her earlier appeal numbered C-160664, and urges us to review its contents to resolve her assignment of error. Again, we note that transcript was never filed in the trial court in these matters and thus is not part of our record on appeal. *See Morgan v. Eads*, 104 Ohio St.3d 142, 2004-Ohio-6110, 818 N.E.2d 1157, ¶ 13 (declaring, as "a bedrock principle of appellate practice in Ohio[,] * * * that an appeals court is limited to the record of the proceedings" before the court below). A reviewing court cannot add matter to the record before it and then decide the appeal on that basis. *See State v. Ishmail*, 54 Ohio St.2d 402, 377 N.E.2d 500 (1978), syllabus. Therefore, we do not consider the May 2014 transcript in resolving the assignment of error. *See State v. Tekulve*, 188 Ohio App.3d 792, 2010-Ohio-3604, 936 N.E.2d 1030, ¶ 4 (1st Dist.). Moreover, the facts that Sager urges us to conclude from the May 2014 transcript are not the type of facts, "not subject to reasonable dispute" and "capable of accurate and ready determination," cognizable by judicial notice. *See* Evid.R. 201(B). At best, Sager's unsupported contention that the children were not harmed or put at risk is an argument in mitigation of her culpability more properly made at sentencing and not in an application for the sealing of records of conviction where the statutory requirements must be fully complied with. *See Hill*, 2016-Ohio-1551, 63 N.E.3d 690, at ¶ 8.

{¶22} Sager next argues that this court already, albeit indirectly, answered the question of who is the victim of an interference-with-custody offense when we referred to the father of a minor taken out of state by the defendant as "the victim" of the offense in *State v. Robinson*, 146 Ohio App.3d 344, 766 N.E.2d 186 (1st Dist.2001). Sager supports her contention by quoting a passage stating that a

"condition of probation which required defendant to stay away from [the parent] *victim and his family even after victim's daughter* turned 18 years old was an abuse of discretion." (Emphasis added.) But that quotation is not taken from the opinion of this court; it is from the synopsis of the case prepared by the editors of the North Eastern Reporter, 2d Series. The quoted material appeared nowhere in our opinion. The synopsis was not approved by this court and serves only as a researching and indexing aid. *See Parkview Hosp. v. Hosp. Serv. Assn. of Toledo*, 8 Ohio App.2d 315, 222 N.E.2d 314 (10th Dist.1966).

{¶23} In *Robinson*, we did not determine whether the minor daughter or her father was the victim of the interference-with-custody offense. But other courts, while not answering our question directly, have referred to the minor children as victims of interfering-with-custody offenses.

{¶24} For example, in *State v. Cornelius*, the Second District Court of Appeals held that to prove a violation of R.C. 2919.23(A)(1), the state was required to prove that the mentally or physically handicapped "*child victim of the offense*" was under 21 years of age and subject to rights conferred by law on "the victim's parent, guardian, or custodian," and that the offender enticed, took, kept, or harbored "the victim from the victim's parent, guardian, or custodian." (Emphasis added.) *State v. Cornelius*, 2d Dist. Miami No. 10CA10, 2011-Ohio-2564, ¶ 18; *see State v. Villamor-Goubeaux*, 2016-Ohio-7420, 72 N.E.3d 1185, ¶ 24 (2d Dist.); *State v. Hess*, 5th Dist. Delaware No. 77-CA-1, 1977 WL 200776, *1 (May 13, 1977) (holding that it was "uncontroverted" that "the victim" of the interference-with-custody offense was a 12-year-old female with whom the defendant spent a weekend traveling to Kentucky); *State v. Kincer*, 12th Dist. Clermont No. CA2005-07-059, 2006-Ohio-2249, ¶ 10 (a 15-year-old child taken to Kentucky by the defendant was the victim of the interference-with-custody offense for purposes of a community-control revocation).

## IV. Statutory Interpretation

{¶25}  While the text of R.C. 2919.23 does not define who is "the victim" of the proscribed conduct, other provisions of the Revised Code, when read in pari materia, make it clear that a child enticed, taken, kept, or harbored is a victim of an interfering-with-custody offense.

{¶26}  In interpreting a statute, a court's principal concern is the legislative intent in enacting the statute.  In order to determine that intent, a court must first look at the words of the statute itself.  *See Carnes v. Kemp*, 104 Ohio St.3d 629, 2004-Ohio-7107, 821 N.E.2d 180, ¶ 16.  Here, the text of R.C. 2919.23 does not define who is "the victim" of the proscribed conduct.  Nonetheless R.C. 2919.23 "provides an ascertainable standard of guilt and gives notice as to precisely what conduct is criminally proscribed."  *State v. Harris*, 1st Dist. Hamilton No. 15978, 1983 WL 5276, *2 (Oct. 26, 1983) (holding R.C. 2919.23 to be facially constitutional).

{¶27}  Courts should construe statutory provisions together and read the Revised Code "as an interrelated body of law."  *State v. Moaning*, 76 Ohio St.3d 126, 128, 666 N.E.2d 1115 (1996).  Statutes that relate to the same subject matter or refer to one another may be construed in pari materia, that is, they may be construed together so that inconsistencies in one statute may be resolved by looking at another statute on a similar topic.  *See State ex rel. Choices for South-Western City Schools v. Anthony*, 108 Ohio St.3d 1, 2005-Ohio-5362, 840 N.E.2d 582, ¶ 46.

{¶28}  At least three other provisions of the Revised Code relate to the same subject matter at issue—defining a child victim—and, referring to one another, may be construed together and read in pari materia.

{¶29}  R.C. 2307.50 creates a civil action for depriving an adult of his or her parental interest in a minor.  *See Giambrone v. Berger*, 57 Ohio App.3d 38, 39, 566 N.E.2d 711 (1st Dist.1989).  A parent may maintain a civil action to recover damages for interference with parental interest "*if* [the] *minor is a victim of a child stealing*

9

*crime*," and as a result of that crime the parent is deprived of a parental or guardianship interest in the minor. (Emphasis added.) R.C. 2307.50(B). The statute provides that a " '[c]hild stealing crime' means a violation of sections 2905.01 [kidnapping], 2905.02 [abduction], 2905.03 [unlawful restraint], and 2919.23 [interference with custody] of the Revised Code or section 2905.04 [child stealing] of the Revised Code as it existed prior to the effective date of this amendment." R.C. 2307.50(A)(1).

{¶30} R.C. 2901.30 identifies actions that police officers must take when confronted with reports of a missing child. For purposes of that section, R.C. 2901.30(A)(3)(b) defines a missing child as a minor who is missing and about whom there is reason to believe the minor could be "the victim of a violation of" interference with custody under R.C. 2919.23 and the same list of serious abduction offenses identified in R.C. 2307.50(A)(1).

{¶31} Finally, for purposes of the victim-rights provisions of the Revised Code, R.C. 2930.01(H)(1) defines "victim" as a person who is identified as the victim of a crime in a police report or in a complaint, indictment, or information that charges the commission of a crime. We note that the definition of victim here is specific to R.C. Chapter 2930. *See State v. Ritchie*, 174 Ohio App.3d 582, 2007-Ohio-6577, 883 N.E.2d 1092, ¶ 23 (5th Dist.). But for purposes of construing other code provisions in pari materia, the legislature's intent to identify the victim of an offense as one named in the indictment is instructive.

{¶32} Moreover, in determining the intention of the legislature, a court may consider among other matters the "object sought to be attained," and "laws upon the same or similar subjects." R.C. 1.49. The General Assembly's inclusion, in R.C. 2307.50(A)(1) and 2901.30, of interference with custody in a list of other serious offenses where the victim of the offense is clearly the person abducted is further evidence that the legislature intended the child taken or held to be a victim under

R.C. 2919.23. Finally, we have previously held that in other "offenses against the family," defined, like interference with custody, in R.C. Chapter 2919, a minor child can be a victim of an offense, preventing the sealing of records of conviction. *See State v. Westendorf*, 1st Dist. Hamilton No. C-020114, 2003-Ohio-1019, ¶ 3 (holding that in nonsupport cases under R.C. 2919.21, the victim of the offenses is the child).

{¶33} Therefore, we hold that in a prosecution under R.C. 2919.23(A)(1), the minor enticed, taken, kept, or harbored is a victim of the offense.

### V. Conclusion

{¶34} Here, only Sager's two minor children were identified in the indictment. Their father, the custodial parent, was not. There is no factual dispute as to the age of the children taken. *See Hill*, 2016-Ohio-1551, 63 N.E.3d 690, at ¶ 11. They were both below the threshold ages identified in R.C. 2919.23(A)(1) and 2953.36(A)(6).

{¶35} Since the only facts discernable from our record reveal that, following a jury trial, Sager was convicted of enticing, taking, keeping, or harboring her nine- and 11-year-old children, that the children were victims of the offenses, and that the offenses were punishable as first-degree misdemeanors, R.C. 2953.36(A)(6) clearly and unambiguously precludes sealing the records of the convictions. Therefore, the trial court had no jurisdiction to grant Sager's second application to seal her records of conviction, and properly refused to do so. *See Westendorf*, 1st Dist. Hamilton No. C-020114, 2003-Ohio-1019, at ¶ 4. The assignment of error is overruled.

{¶36} The judgments of the trial court are affirmed.

Judgments affirmed.

**ZAYAS** and **MYERS, JJ.,** concur.

Please note:
    The court has recorded its own entry on the date of the release of this opinion.

